FILED
2011 Feb-08  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **MARSHALL W. PRIEST,** | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   CV 10-J-1669-NE |
| | ] |
| **MICHAEL J. ASTRUE,** | ] |
| **Commissioner of Social Security**, | ] |
| | ] |
| Defendant. | ] |

**MEMORANDUM OPINION**

The plaintiff appeals from the decision of the Commissioner of Social Security denying him supplemental security income ("SSI") based on disability. The case is now properly before the court. See 42 U.S.C. § 405(g).

The plaintiff was born April 30, 1957, making him almost 51 years old at the time of the hearing before the Administrative Law Judge ("ALJ") (R. 36). He completed the sixth grade (R. 42-43). The plaintiff alleges an inability to work due to pain in his hands, burning in his feet, and pain in his legs (R. 43-45, 139). He also suffers from depression, stating, "I just don't care about life anymore" (R. 46).

The ALJ found that the plaintiff's impairments which are severe are early signs of Dupuytren's contracture of the left palm only, generalized arthralgias, chronic obstructive pulmonary disease, and depression (R. 15). The ALJ found that none of the plaintiff's impairments constituted an impairment or combination of impairments listed in, or medically equal to, one of those listed in Appendix 1 of Subpart P of Social Security Regulations No. 4 (R. 15).

The ALJ found that the plaintiff had physical limitations which limited him to the light range of work with further limitations from climbing ladders, ropes and scaffolding; working

around unprotected heights or around dangerous, moving, unguarded machinery; and working in concentrated exposure to dust, fumes, gases, and orders; and a restriction to only simple, repetitive, routine work (i.e. unskilled work) (R. 16).  The ALJ found that as a result of the plaintiff's depression, he experienced no greater than moderate functional restrictions and limitations (R. 20).

Given these limitations, the ALJ found that the plaintiff was not capable of returning to his past relevant work (R. 22).  However, he found the plaintiff could perform work which exists in the regional economy in significant numbers (R. 23).  The Vocational Expert who testified at the hearing testified that at least 5,000 jobs existed in the regional economy which the plaintiff could perform with the above limitations (R. 55).  The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 23).

The plaintiff argues that the ALJ failed to properly consider the plaintiff's pain in accordance with the Eleventh Circuit pain standard.  Plaintiff's memorandum at 5.  The plaintiff alleged that his pain on an average day is a seven or an eight (R. 45).  However, the medical records on which the plaintiff relies to support these allegation of pain simply reflect that the plaintiff complained of pain and limitations.

Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater* , 67 F.3d 1553, 1560 (11th Cir.1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)).

2

While the standard requires objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, it does not require objective proof of the pain itself. Thus under both the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929. This same standard applies to testimony about other subjective symptoms. Furthermore, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561. Therefore, if a plaintiff  testifies he suffers from pain or other subjective symptoms at a level that would prevent work and he satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

While the plaintiff here alleges disability due to pain, wholly lacking is any objective medical evidence that confirms the severity of the alleged pain arising from that condition or any evidence that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  Objective evidence of any ailment which could cause disabling pain is completely absent from the record.  For example, while the plaintiff claimed a complete inability to hold anything at all in his left hand (R. 43), consultative examinations in 2006 and 2008 both found no limitations in plaintiff's grip strength and no limitations in his ability to use both hands (R. 195, 429). Similarly, while the plaintiff complained of back pain, knee pain and foot pain, physical examinations found little to no limitations in the plaintiff's ability to move all joints and muscles (R. 194, 424, 429).

3

The two consultative examinations in the record reflect almost identical findings by two different doctors in two different states, almost two years apart.[1]  On October 23, 2006, Dr. Dobbs stated "no definite impairment found I suspect mild breathing impairment and therefore mild limitations (illegible) carrying" (R. 197).  Pulmonary function tests confirmed his suspicion of a breathing impairment, finding "a mild to moderate degree of obstructive lung disease..." (R. 185).  On July 22, 2008, Dr. Jampala concluded

> The patient is a 51 year old white male with history of Back pain, left hand pain, insomnia, acid reflux disease, depression, drug abuse, hepatitis, COPD has most probable early stages of Dupuytren's contractures in his left palm, other wise, I don't see any evidence of inflammatory joint disease and his x rays are normal.  His rest of the exam is normal.

(R. 424).  Based on his findings, Dr. Jampala limited the plaintiff to frequently lifting and carrying no more than 10 pounds (R. 425).

Sporadic psychological treatment records do reflect diagnoses of depression. However, these records as a whole also reflect that plaintiff is, at best, inconsistent in seeking and following psychological treatment.  Since his alleged onset of August 2006, the plaintiff has been seen as follows:

Intake forms completed in November 2007 reflect the plaintiff was diagnosed with Major Depressive Disorder, recurrent and severe, and given a GAF of 40 (R. 370). However, on the same date his records reflect comments that he has "good insight" but a history of non-compliance (R. 371, 373).  Those records note that he is currently experiencing symptoms of depression On January 10, 2008, the plaintiff reported being

---

[1]A clinic medical forms from April 2006 listed plaintiff's ailments as hypertension, anxiety, heptomegaly, and back pain (R. 179).  He did not mention hand or foot pain at the time (R. 176-184).  In July 2007 the plaintiff was seen in an emergency room for complaints of low back pain for which he was given a shot of Toradol and told to take Advil upon discharge (R. 240-243).  At the time, he was noted to "walk[] on toes well" (R. 244).  In October 2007 the plaintiff was again seen in an emergency room for sudden onset neck pain (R. 334).  Those records reflect that the plaintiff had a full range of motion in his neck without pain, no significant muscle spasm and no tenderness (R. 335).

nervous and anxious, but relayed that he had quit taking prescribed medication (R. 367). His mood was stable and his affect normal (R. 367).  On January 18, 2008, the plaintiff was assigned a GAF of 55 with a current diagnosis of Adjustment Disorder (R. 369).   On February 12, 2008, the plaintiff did not show for his appointment, but called later to reschedule (R. 365-366).  On February 27, 2008, the plaintiff called and rescheduled his appointment (R. 364).  On March 19, 2008, the plaintiff did not show for his appointment (R. 362).

On April 6, 2008, the plaintiff asserted he was depressed and anxious, and was noted to be sad and tearful (R. 398).  Ten days later he reported increased panic attacks and depression, but reported he was sleeping better, and further reported suicidal thoughts (R. 400).  On April 18, 2008, a notation reflects that the plaintiff was preoccupied with his failure to obtain Social Security benefits (R. 422).  By the end of April, the plaintiff reported that Paxil was helping, that he was able to think more clearly, that he was trying, and that he was not as depressed (R. 413).  However, a report of the same date noted the plaintiff was disheveled and anxious (R. 414).  The plaintiff's May and June 2008 records reflect that the plaintiff had anger towards the government for ignoring his needs and accused the government of intentionally delaying his Social Security benefits (R. 404, 407, 409).  He was again assigned a GAF of 40 on May 23, 2008 (R. 420).  On July 10, 2008, the plaintiff had a normal affect but depressed mood, looked well groomed, and was described as "evasive" and "delusional' (R. 403).  On July 17, 2008 the plaintiff was believed to be "regressing" (R. 402).

The records predating the November 2007 intake forms date from 2003 when plaintiff was terminated from services because his case manager could not locate him (R. 380).  Given the psychological treatment records relevant to the current application,  there

is no basis for the court to find a mental limitation which lasted more than twelve months, as required for benefits, or any basis for the ALJ to determine that the plaintiff was disabled based on depression or Adjustment Disorder.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining:  1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The court is satisfied that the decision of the ALJ is supported by substantial evidence.  The record demonstrates that the plaintiff does have severe impairments.  However, the plaintiff's medical records submitted to Social Security do not support a finding of disability based on disabling pain.  The evaluations of the plaintiff's work-related abilities contained in the record both conclude that he is capable of working.  The ALJ listed limitations on the plaintiff's ability to engage in work activity in accordance with Dr. Jampala's findings, and even added further limitations.  The Vocational Expert who testified at the plaintiff's hearing stated that jobs exist in significant numbers which allow for such limitations.

6

After reviewing all of the records in the file, this court finds that the ALJ was not in error to discount the plaintiff's complaints of pain as no medical evidence supports his claims of severe, disabling pain.[2] Furthermore, the ALJ did not err in his consideration of the plaintiff's mental limitations, as the record reflects the ALJ considered them and appropriately limited his findings of work the plaintiff could perform based on the same.

Having considered the evidence submitted to and adduced at the hearing before the Administrative Law Judge and considered by him and the Appeals Council, the court is satisfied that the decision of the Administrative Law Judge is based upon substantial evidence and that the Administrative Law Judge applied the correct legal standard to each issue presented.  Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this 8th day of  February, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[2]The court reaches this conclusion not withstanding the Commissioner's argument that:

...the ALJ assessed all Plaintiff's conditions in combination in determining her limitations.... The ALJ thoroughly analyzed the Plaintiff's coronary artery disease, hyperlipidemia, hypertension, diabetes, obesity, and depression throughout his discussion....

Commissioner's response, at 14.  Setting aside the fact that the plaintiff in this case is a man, and hence properly referred to as a "him" rather than a "her," the court notes the plaintiff has only the diagnoses of hypertension and depression from the above list.  Thus, this section of the Commissioner's brief is disregarded.